IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON CHRISTOPHER WHEELER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PRISON HEALTH SERVICES, INC.; JEFFREY | : | |
| BEARD (*in his official capacity on behalf of the* | : | No. 09-410 |
| *Pennsylvania Department of Corrections*); **DAVID** | : | |
| **DIGUGLIEMO** (*in his official capacity on behalf of* | : | |
| *the State Correctional Institution at Graterford*); and | : | |
| **JOHN DOES NO. 1 - 3;** | : | |
| Defendants. | : | |

MEMORANDUM

**NORMA L. SHAPIRO, J.**                                                                                          September 1, 2010

Before the court are two motions to dismiss Aaron Christopher Wheeler's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). Wheeler's second amended complaint asserts two claims under 42 U.S.C. § 1983, and a negligence claim under state law. This court has jurisdiction under 28 U.S.C. §§ 1331 & 1367.

**I.      Background**

We accept the following factual allegations as true and draw all inferences from the facts alleged in the light most favorable to Wheeler. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Plaintiff Aaron Christopher Wheeler ("Wheeler") is a prisoner of the Commonwealth of Pennsylvania Department of Corrections ("DOC") housed at the State Correctional Institution at Graterford ("SCI-Graterford"). Wheeler was convicted on December 4, 1992, and is currently serving a sentence of 27-½ to 55 years in prison. At all relevant times, defendant Jeffrey A. Beard, Ph.D. ("Beard"), was the secretary of the DOC, and defendant David DiGuglielmo

("DiGuglielmo") was the warden at SCI-Graterford. Defendant Prison Health Services, Inc. ("PHS") is a corporation that has contracted with DOC to provide general health care and specialized medical services to inmates at prison facilities, including those at SCI-Graterford. Defendants John Doe #1 (tentatively identified as Doctor Stefanic),[1] #2 (a nurse), and #3 (a correctional officer) are individuals employed by or serving on behalf of PHS or SCI-Graterford; each are alleged to have contributed to the harms complained of in the complaint.

On or around February 25, 2006, Wheeler noticed a boil on his stomach. He also suffered from a high fever, swelling in his stomach area, and was in excessive pain. Wheeler requested medical care by completing a sick call request for treatment of the boil. Dr. Stefanic examined Wheeler on or around February 26, 2006. Dr. Stefanic diagnosed Wheeler with methicillin-resistant Staphylococcus aureus ("MRSA"). He cut and drained the boil on Wheeler's stomach and prescribed the antibiotic Bactrim. The defendants failed to provide the prescribed antibiotic on February 26, 2006; Wheeler did not receive the prescribed medication until March 3, 2006. From March 7, 2006 through and including March 12, 2006, Dr. Stefanic cut and drained the boil on Wheeler's stomach daily. Since February 26, 2006, Wheeler has contracted staph infection and/or MRSA twenty-one times on various parts of his body including his face, arms, buttocks and chest.

Wheeler avers that the defendants: (1) deliberately and intentionally deprived him of the prescribed medication; (2) failed to inform him how to prevent the spread of MRSA to other parts of his body or to others; (3) failed to provide a sanitized environment to halt the spread of his condition; (4) failed to provide him with clean towels, bedding, razors, new clothes and liquid

---

[1] John Doe #1 was identified in his motion to dismiss as Richard Stefanic, M.D.

soap; and (5) never performed a culture or laboratory test on any of the infected areas. As a direct and proximate result of the actions of the defendants, Wheeler suffered physical and psychological harm, pain and suffering.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the plaintiff pleads sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

In deciding a motion to dismiss, the court may consider the allegations in the complaint, exhibits attached to the complaint and matters of public record, including judicial proceedings. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). In the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Phillips*, 515 F.3d at 228; *FletcherHarlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

## III.    Discussion

### A.     Counts I & II: The § 1983 Claims

Wheeler's amended complaint asserts two substantive counts for violations of Section

3

1983 against all defendants. Section 1983 authorizes redress for violation of constitutional rights and provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create a substantive right; it provides a method for vindicating federal rights conferred by the United States Constitution. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To establish a claim under Section 1983, a plaintiff must demonstrate: (1) violation of a right secured by the Constitution and the laws of the United States; and (2) deprivation of the right by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

### 1. Count I – The Eighth Amendment Violation

The deprivation of medical treatment violates a prisoner's Eighth Amendment right not to be subjected to cruel and unusual punishment when it results from "deliberate indifference to a prisoner's serious medical illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Court of Appeals has identified several scenarios that satisfy the *Estelle* deliberate indifference standard: e.g., (1) where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury; (2) where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care; and (3) where necessary medical treatment is delayed for non-medical reasons. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d

326, 346-47 (3d Cir. 1987). A medical need is "serious" for purposes of this test if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Id.* at 347. The court assumes that Wheeler's repeated infection is a serious medical illness. Defendants do not dispute this assumption.

### a. Beard and DiGuglielmo in their Official Capacities[2] and PHS

Wheeler alleges that Beard and DiGuglielmo, in their official capacities, and PHS violated his Eighth Amendment rights by failing to adhere to existing policies and procedures related to MRSA treatment, and/or failing to institute adequate policies related to MRSA treatment. Wheeler must establish that there was a policy or custom in place, and the policy or custom caused the constitutional violation alleged. *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Wheeler avers that prison employees and PHS employees were not following any policy or practice regarding MRSA. Based on the complaint, Wheeler was not: (1) informed how to prevent the spread of MRSA; (2) isolated from the general prison population; (3) provided with a sanitized environment; (4) provided with a culture or lab test; or (5) timely provided medication, i.e., the prescribed Bactrim. A policy or custom may exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale*, 318 F.3d at 584.

---

[2] Wheeler's claim for compensatory damages against Beard and DiGuglielmo in their official capacities must be dismissed because a person sued in his official capacity is not a "person" under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not actions against the State. *Id.* at 71 n.10. Wheeler's claim for injunctive relief may proceed.

5

At this stage of the proceeding, it is plausible that there was a policy or custom of indifference; accordingly, the motions to dismiss Count I will be denied.

### b. John Doe #1 – Richard Stefanic, M.D.[3]

Wheeler alleges that Dr. Stefanic's inadequate medical care constituted deliberate indifference to Wheeler's serious medical need. The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Only egregious acts or omissions can violate this standard; mere medical malpractice cannot result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition" also fails to state a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106. This standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

The allegations in the complaint clearly illustrate that Wheeler received medical attention. Dr. Stefanic accurately diagnosed Wheeler, prescribed him appropriate medication, and treated his wounds on numerous occasions. Wheeler's complaint may be a non-actionable disagreement with Dr. Stefanic's choice of treatment and unexplained delay in providing the prescribed

---

[3] At oral argument on August 16, 2010, this court recognized the difficulty in assessing Dr. Stefanic's liability on a motion to dismiss, and denied the motion to dismiss without prejudice to a motion for summary judgment after discovery. Having reconsidered the complaint, the motion to dismiss, and the relevant case law, for the reasons explained *infra*, the court will grant the motion to dismiss because the complaint fails to state a cause of action against Dr. Stefanic for deliberate indifference to a serious medical need.

medication. The complaint does not allege that Dr. Stefanic was the cause of the delay,[4] nor is the delay so excessive as to rise to the level of deliberate indifference. The complaint alleges efforts by Dr. Stefanic to provide Wheeler with necessary medical care. Wheeler's Eighth Amendment claim against Dr. Stefanic individually must be dismissed.

### 2. Count II – State Created Danger

Wheeler contends that defendants' treatment, or lack thereof, of his medical condition, deprived him of his due process rights. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195-96, 109 S.Ct. 998 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* One exception to this general rule arises under the state created danger doctrine, where the state assumes responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir. 1996).

To state a claim under the state created danger doctrine, a plaintiff must allege: (1) the harm caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff exists

---

[4] The court does not credit the allegation that PHS doctors deliberately denied Wheeler his medication; the statement is conclusory and lacks sufficient factual matter to be accepted as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("civil complaints must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'") (citing *Iqbal*, 129 S.Ct. at 1949).

so that the plaintiff was a foreseeable victim of the state's acts; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). Liability for a state created danger, as noted in the fourth element, is predicated upon the state's affirmative acts which work to the plaintiff's detriment on exposure to danger. *Id.* at 281. It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause. *Id*.

The fourth element is satisfied where the state's action was the "but for cause" of the danger faced by the plaintiff. *Kaucher v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006). In *Kaucher*, a corrections officer, John Kaucher, filed a § 1983 action against the county and county employees responsible for the operation of a correctional facility; it alleged that he contracted MRSA as a result of defendants' conscience-shocking behavior in creating unsanitary and dangerous conditions at the jail. Kaucher's claims essentially were complaints about the county's inaction, although framed in terms of actions affirmatively creating dangerous conditions and affirmatively misrepresenting dangers. *Id.* at 433. For example, Kaucher alleged that the defendants: (a) failed to act affirmatively to improve conditions at the jail; (b) failed to act affirmatively to educate and warn inmates and corrections officers about MRSA; and (c) failed to act affirmatively to train inmates in infection prevention. *Id*. The court of appeals affirmed dismissal of Kaucher's state created danger claim because Kaucher failed to allege conscience-shocking conduct on the part of defendants, and failed to allege defendants acted affirmatively to create a risk of danger that would otherwise not have existed. *Id.* at 431-32.

Wheeler's complaint does not allege actions affirmatively creating dangerous conditions;

8

Wheeler's complaint mainly alleges defendants' failures to act; for example defendants: (1) failed to inform him how to prevent the spread of MRSA; (2) failed to isolate him from the rest of the prison population; (3) failed to provide a sanitized environment to halt the spread of his condition; and (4) failed to adhere to or institute adequate policies related to his medical condition. (Pl. Compl. ¶¶ 22-24, 44-45). The one alleged act that could be characterized as affirmative was Dr. Stefanic's treatment of Wheeler. However, Dr. Stefanic's treatment was not the "but for cause" of Wheeler's infections and is not so alleged. The heightened duty does not remove the need for an affirmative act. Wheeler's claim of state created danger fails under the fourth element required to establish a state created danger because he does not allege defendants acted affirmatively to create a risk of danger that would otherwise not have existed. Wheeler's state created danger claim, without an allegation of an affirmative act by the state, fails as a matter of law. Count II will be dismissed.

### B. Count III - Negligence[5]

Count III asserts a claim in negligence against PHS, John Doe #1, and John Doe #2. The motion to dismiss only attacks the claims against PHS and John Doe #1.

#### 1. Corporate Negligence Against PHS

A claim for corporate negligence arises, not from the actions of individuals, but instead because of the policies or actions of an institution. *Fox v. Horn*, No. 09-1028, 2000 WL 49374, at *7 (E.D. Pa. Jan. 21, 2000). The Pennsylvania Supreme Court recognized this theory of

---

[5] Should the court determine that the Third Amended Complaint fails to state a federal claim, it reserves the right to decline to exercise supplemental jurisdiction over the state negligence claims pursuant to 28 U.S.C. § 1367(b)(3). The court also reserves the right to sever and stay the state claims pending the disposition of the federal causes of action.

9

liability in *Thompson v. Nason Hospital*, 591 A.2d 703, 707 (Pa. 1991); the hospital owes a non-delegable duty directly to a patient. The hospital's duties have been classified into four general areas: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee patient care of all persons who practice medicine within its walls; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients. *Id.* at 707-08. For a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm, and the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party. *Id.* at 708.

PHS argues that it cannot be held liable for corporate negligence because corporate liability is limited to hospitals and other comprehensive health care centers. The Supreme Court of Pennsylvania has not yet decided whether an organization like PHS, providing general health care and specialized medical services to inmates at prison facilities, can be held liable for corporate negligence. When presented with a novel issue of law, or where applicable state precedent is ambiguous, absent or incomplete, the court must determine or predict how the highest state court would rule. *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991). The decisions of the intermediate state courts must be given proper regard when making such a determination.

Corporate liability was recently addressed by the Superior Court of Pennsylvania in *Hyrcza v. West Penn Allegheny Health System, Inc. et al.*:

¶ 54 The theory of corporate negligence as a basis for hospital liability was first

> recognized by our Supreme Court in *Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991). In *Thompson*, the Court found that a hospital could owe a non-delegable duty to uphold a certain standard of care directly to its patients, without requiring an injured party to establish the negligence of a third party. The basis for imposing direct liability on hospitals, as recognized by the Court, was that hospitals had "evolved into highly sophisticated corporations operating primarily on a fee-for-service basis. The corporate hospital of today has assumed the role of a comprehensive health center with responsibility for arranging and coordinating the total health care of its patients." *Id.* at 337-38, 591 A.2d at 706.
>
> . . . .
>
> ¶ 56 The doctrine of corporate liability was extended to HMO's in *Shannon v. McNulty*, 718 A.2d 828 (Pa. Super.1998), in which this Court likened those entities to hospitals by stating that "while these providers do not practice medicine, they do involve themselves daily in decisions affecting their subscriber's medical care." *Id.* at 835. "These decisions may, among others, limit the length of hospital stays, restrict the use of specialists, prohibit or limit post hospital care, restrict access to therapy, or prevent rendering of emergency room care." *Id.* We stated that these decisions "must pass the test of medical reasonableness," and that to "hold otherwise would be to deny the true effect of the provider's actions, namely, dictating and directing the subscriber's medical care." *Id.*
>
> ¶ 57 This Court declined, however, to extend the doctrine to apply to a physician's office in *Sutherland v. Monongahela Valley Hosp.*, 856 A.2d 55 (Pa. Super.2004), finding that the rationale in *Thompson* of a hospital assuming the role of a "comprehensive health center with responsibility for arranging and coordinating the total health care of its patients" did not apply.

978 A.2d 961, 981-82 (Pa. Super. 2009). *Hyrcza* involved a corporate negligence claim against ChoiceCare Physicians, P.C., a medical professional corporation providing medical care for patients admitted to a hospital's rehabilitation unit. An issue on appeal was whether it was reversible error to charge the jury on corporate negligence of ChoiceCare. *Id.* at 981. The *Hyrcza* court held that charging the jury on corporate negligence was not reversible error. The evidence supported the trial court's finding that ChoiceCare's involvement in the patient's medical decisions was closer to that of a hospital or HMO than a physician's office because

11

"ChoiceCare was a comprehensive health care provider with the 'responsibility for arranging and coordinating the total health care of its patients,' and was involved in daily decisions affecting its patients' medical care." *Id.* at 982-83.

Considering decisions of the intermediate Pennsylvania courts, and the well-reasoned opinions of courts in the Eastern District, *Fox v. Horn*, No. 98-5279, 2000 WL 49374, at *8 (E.D. Pa. Jan. 21, 2000) and *Zheng v. Palakovich*, No. 09-1028, 2010 WL 1508521, at *7 (M.D. Pa. Apr. 13, 2010) (allowing claim for corporate negligence against MHM Correctional Services, Inc., a private company providing mental health services to SCI-Smithfield), this court finds the Pennsylvania Supreme Court would extend corporate negligence to an institution responsible for an inmate's healthcare, like PHS.

Wheeler's theory of liability is valid as a matter of law, but fails under the plausibility standard of *Iqbal* and *Twombly*. Under *Iqbal* and *Twombly*, to survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. Wheeler fails to allege that PHS breached any corporate negligence duties identified by the Supreme Court of Pennsylvania. *Thompson*, 591 A.2d at 708. Accordingly, Count III fails to state a claim of corporate negligence and must be dismissed as to PHS.

### 2.     Negligence Against John Doe #1

The claim against John Doe #1, Dr. Stefanic, also fails under *Iqbal* and *Twombly*. Count III recites the elements of a negligence cause of action, but does not plead sufficient factual content to allow the court to draw the reasonable inference that Dr. Stefanic is liable for the alleged medical misconduct. The factual averments establish that Dr. Stefanic accurately

diagnosed Wheeler, prescribed the appropriate medication, and treated his wound on numerous occasions. The complaint fails to state a breach of Dr. Stefanic's duty of care. The few averments about Dr. Stefanic are conclusory and must be disregarded. *Fowler*, 578 F.3d at 210-11. Count III will be dismissed.

## IV. Conclusion

For the reasons stated above, the court will grant in part defendants' motions to dismiss. Wheeler will be granted leave to file a third amended complaint. Count I will be dismissed as to compensatory damages from Beard and DiGuglielmo. Count I will also be dismissed as to John Doe #1. Count II will be dismissed in its entirety. Count III will be dismissed without prejudice to reassertion in the third amended complaint. Wheeler will be granted leave to file a third amended complaint. The third amended complaint should: (1) correct the caption by obtaining the names of the new secretary of the DOC and the new warden at SCI-Graterford; (2) substitute the John Doe defendants with properly named individuals; (3) address exhaustion of administrative remedies and the statute of limitations; and (4) specify the nature of requested prospective relief. All other aspects of the motions to dismiss will be denied.

An appropriate Order follows.